1
2
3
4
5
6                       IN THE UNITED STATES DISTRICT COURT

7                          FOR THE DISTRICT OF ARIZONA

8    Kathryn Marie Jones,                    )    No.  CV-14-00383-PHX-SPL
                                             )
9                                            )
                      Plaintiff,             )
10   vs.                                     )    **ORDER**
                                             )
11                                           )
     Medtronic, et al.,                      )
12                                           )
                                             )
13                    Defendants.            )
                                             )
14   _____   )

15          Before the Court is Defendant Medtronic's Motion to Dismiss (Doc. 17). The

16   motion is fully briefed (*see* Doc. 30, 32), and for the reasons that follow, will be granted.[1]

17   **I.      Background**

18          On January 28, 2014, Plaintiff Kathryn Marie Jones filed a Complaint (Doc. 1-2)

19   in the Maricopa County Superior Court, and the action was removed to federal court on

20   February 26, 2014 (Doc. 1). In the complaint, Plaintiff brings seven causes of action

21   against Defendant for: (1) fraud in the inducement (Count I); (2) actual fraud (Count II);

22   (3) constructive fraud (Count III); (4) willful negligence and gross negligence (Count

23   IV); (5) design defect (Count V); (6) negligence per se (Count VI); and (7) punitive

24   damages (Count VII). (Doc. 1-2.)

25          At the heart of the complaint is Plaintiff's claim that Defendant is liable for

26   actively promoting the off-label use of its FDA-approved devices. Plaintiff alleges that

27   _____

28   [1]      The requests for oral argument are denied because the issues have been fully
     briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b);
     *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1  Defendant is in the business of selling, manufacturing, and distributing medical devices.
2  (*Id.* at 3.) Specifically, Defendant is alleged to have manufactured, marketed, promoted,
3  advertised, sold, and distributed "Infuse Bone Graft, Infuse Bone Graft/LT Cage Lumbar
4  Tapered Fusion Devices, Capstone Spinal System Cages, Clydesdale Spinal System
5  Cages, PEEK Intervertebral Cages, Cannulated Screws, Longitude Set Screws, Rods, the
6  METRx system, and any and all other Medtronic devices, products, and therapies
7  implanted in or used upon the body of Plaintiff Kathryn Marie Jones." (*Id.* at 3.) Plaintiff
8  further alleges that it is "possible" that her surgeons used the CD Horizon Longitude
9  System during her surgeries. (*Id.* at 36.)

10       On October 26, 2010, Plaintiff's first surgery was a direct lateral anterior
11  interbody fusion during which she alleges her lumbar discs were removed and the Infuse
12  Bone Graft and autogenous[2] bone were implanted in Clydesdale Spinal System Cages
13  ("Clydesdale cage.") (*Id.* at 8.) Plaintiff's second surgery, that same afternoon, was a
14  right transforaminal lumbar interbody fusion, to repair a fractured vertebra and damaged
15  nerve root. After the repairs, Plaintiff alleges she was implanted with the Infuse Bone
16  Graft and autogenous bone in a Capstone Spinal System Cage ("Capstone Cage.") On
17  October 27, 2010, she underwent a posterior lumbar interbody fusion surgery during
18  which she alleges that the Infuse Bone Graft was implanted without cages. (*Id.* at 8-9.)
19  Plaintiff claims her surgeries were unsuccessful and she suffers severe, permanent,
20  disabling injuries as a result. (*Id.* at 4.)

21       Defendant moves to dismiss Plaintiff's claims because they are: (1) expressly
22  preempted by Section 360k of the Medical Device Amendments ("MDA") and the
23  holding in *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008); (2) impliedly preempted by
24  *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); (3) and otherwise fail to
25  state a claim for relief. Additionally, Defendant argues that Plaintiff's fraud claims fail to
26  comply with Rule 9(b).

27  ---
[2]    A person's own bone harvested from other locations. *See* http://www.merriam-
28  webster.com/medical/autogenous ("originating or derived from sources within the same
individual").

2

In response, Plaintiff urges the Court to adopt the holding in *Ramirez v. Medtronic, Inc.,* 961 F. Supp. 2d 977, 985-87 (D. Ariz. 2013), *mot. for reconsideration denied* (Oct. 24, 2013), which held that if a manufacturer promotes off-label usage of its medical devices, it is creating a new use for the device that is not covered by the MDA and preemption is defeated. Plaintiff further argues that her claims against Class II medical devices are not preempted.

## II.    Legal Standards

### A.    Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted if the complaint fails to state: (1) a cognizable legal theory; or (2) sufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). Although a complaint "does not need detailed factual allegations," a plaintiff must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.*

In reviewing a complaint for failure to state a claim, the Court must "accept as true

all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *see also Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir. 2009). In comparison, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" are not entitled to the assumption of truth, *Daniels-Hall*, 629 F.3d at 998, and "are insufficient to defeat a motion to dismiss for failure to state a claim," *In re Cutera Sec. Litig.,* 610 F.3d 1103, 1108 (9th Cir. 2010) (internal citation and quotation omitted).

Although a court may not consider matters outside the pleadings in ruling on a Rule 12(b) motion, a document is not considered "outside" the complaint if it is attached to the complaint and its authenticity is not questioned. *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997). *See also Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005) (a court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading.") (quotations and brackets omitted)*.* The Court may also consider undisputed "matters of public record" that are judicially noticed. *See Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001); Fed. R. Evid. 201(b).

### B.     Rule 9(b)

Fraud claims are subject to Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a plaintiff "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires that the pleader "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The plaintiff must also "set forth . . . an explanation as to why the disputed statement was untrue or misleading when made." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.").

4

1

### C.    Rule 15

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). "The power to grant leave to amend . . . is entrusted to the discretion of the district court, which 'determines the propriety of a motion to amend by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility.'" *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (quoting *William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 669 n.8 (9th Cir. 2009)). *See also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (district courts properly deny leave to amend if the proposed amendment would be futile or the amended complaint would be subject to dismissal). When dismissing for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). *See also Carrico v. City & Cnty. of San Francisco,* 656 F.3d 1002, 1008 (9th Cir. 2011) ("It is properly denied, however, if amendment would be futile.").

### III.    Medical Device Amendments

#### 1.    Approval Process

Congress enacted the Medical Device Amendments[3] ("MDA") to the Federal Food, Drug and Cosmetic Act[4] ("FDCA") and authorized the Food and Drug Administration ("FDA") to regulate the safety and effectiveness of medical devices. The MDA establishes different levels of oversight for medical devices, depending upon the risks they present. *Riegel v. Medtronic, Inc.,* 552 U.S. 312, 316 (2008).

Class I devices are the safest products and receive the lowest level of oversight, consisting of "general controls" such as labeling requirements. *Id*.

---

[3]    21 U.S.C. § 360c *et seq*.

[4]    21 U.S.C. § 301 *et seq*.

Class II devices are those "that are potentially more harmful." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 477 (1996). Class II devices are approved through the 510(k) process, a limited form of review. *Id.,* 518 U.S. at 478. Class II devices are subject to "general controls" and to "special controls," such as performance standards and post-market surveillance measures. *Riegel,* 552 U.S. at 316-17.

Class III devices receive the most federal oversight, and are subject to a pre-market approval process. *Id.* at 317-18. The FDA grants pre-market approval ("PMA") "only if it finds there is a 'reasonable assurance' of the device's 'safety and effectiveness' . . . after weigh[ing] any probable benefit to health from the use of the device against any probable risk of injury or illness from such use." *Id.* at 318 (quoting §§ 360e(d) & 360c(a)(2)(C)). The FDA must weigh the risks and benefits before granting PMA. Once a device receives PMA, the manufacturer must obtain FDA approval before making any changes in design specification, manufacturing processes, labeling, or other feature that would affect the device's safety or effectiveness. *Id.* at 319 (citing § 360e(d)(6)(A)(i)). "If the applicant wishes to make such a change, it must submit, and the FDA must approve, an application for supplemental pre-market approval, to be evaluated under the largely the same criteria as an initial application." *Id.* (citing § 360e(d)(6); 21 C.F.R. § 814.39(c)). After PMA, the manufacturer is required to inform the FDA of any new studies of the device or incidents causing adverse effects. *Id.* (citing § 360i and 21 C.F.R. §§ 814.84(b)(2) & 803.50(a)). In other words, the PMA process is an ongoing process. FDA oversight does not end with approval.

## 2.    Express and Implied Preemption

Section 360k of the MDA provides:

> Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

6

21 U.S.C. § 360k(a).

State-law claims are *expressly* preempted under 21 U.S.C. § 360k where: (1) the federal government establishes "requirements" applicable to the device in question; and (2) the state common-law claims are based on state-law requirements "that are 'different from, or in addition to,' the federal ones, and that relate to safety and effectiveness." *Riegel*, 552 U.S. at 321- 22 (citing 21 U.S.C. § 360k(a)). "[C]omplying with the FDA's detailed regulatory regime in the shadow of 50 States' tort regimes w[ould] dramatically increase the burdens facing potential applicants—burdens not contemplated by Congress in enacting the FDCA and the MDA." *Perez v. Nidek Co., Ltd.,* 711 F.3d 1109, 1119 (9th Cir. 2013) (quoting *Buckman,* 531 U.S. at 350).

State-law claims are *impliedly* preempted under 21 U.S.C. § 360k where the claims seek to enforce an exclusively federal requirement not grounded in traditional state-tort law. *See Buckman,* 531 U.S. at 341; *Perez,* 711 F.3d at 1119-20 (applying *Buckman* to fraud-by-omission claim based on a failure to disclose information to patients). Implied preemptions also occur when there is no valid state-law claim but the manufacturer has violated FDA provisions. 21 U.S.C. § 337(a) ("[A]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States.").

"Together, express preemption and implied preemption identify a 'narrow gap through which a state-law claim must fit to escape preemption.'" *Beavers-Gabriel v. Medtronic, Inc.,* 15 F. Supp. 3d 1021, 1032 (D. Haw. 2014) (quoting *Perez,* 711 F.3d at 1120). A plaintiff can pass through this narrow gap by alleging "parallel" claims. As the Court explained in *Riegel*, "§ 360k does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements." *Riegel,* 552 U.S. at 330 (citing *Lohr,* 518 U.S. at 495).[5] "'In order for a state requirement to be parallel to a federal

---

[5]     Recently, the Ninth Circuit affirmed its position that state claims based on violations of FDA regulations may proceed. *McClellan v. I-Flow Corp.,* 2015 WL 294292, at *4 (9th Cir. Jan. 23, 2015).

requirement, and thus not expressly preempted under § 360k(a), the plaintiff must show that the requirements are 'genuinely equivalent.' State and federal requirements are not genuinely equivalent if a manufacturer could be held liable under the state law without having violated the federal law.'" *Wolicki-Gables v. Arrow Int'l., Inc.,* 634 F.3d 1296, 1300 (11th Cir. 2011) (citing *McMullen v. Medtronic, Inc.,* 421 F.3d 482, 489 (7th Cir. 2005)); *see also Perez,* 711 F.3d at 1118 (citing *Riegel,* 552 U.S. at 323, 330 (because "the device violated state tort law notwithstanding compliance with the federal requirements, the state claims were preempted.")). "To properly plead parallel claims that survive preemption, a plaintiff must allege facts (1) showing an alleged violation of FDA regulations or requirements related to [the device], and (2) establishing a causal nexus between the alleged injury and the violation." *Houston v. Medtronic, Inc.,* 957 F. Supp. 2d 1166, 1174 (C.D. Cal. 2013) (*Houston I*); *Martin v. Medtronic, Inc.,* 32 F. Supp. 3d 1026, 1034 (D. Ariz. 2014); *Eidson v. Medtronic, Inc.,* 2014 WL 1996024, at *7 (N.D. Cal. May 13, 2014) (*Eidson II*).

**IV.     Discussion**

### A.     Medical Devices and Preemption

As described above, the different classes of medical devices are treated differently under FDA regulations. Additionally, specific devices may or may not have additional requirements that grant them preemption status. Therefore, the Court will address each medical device individually.

#### 1.     Infuse Device[6]

On July 2, 2002, the FDA granted PMA for the Infuse Bone Graft/LT-Cage Lumbar Tapered Fusion Device ("Infuse Device") as a Class III medical device. (Doc. 1-2 at 13.) The Infuse Device consists of: (1) "Infuse Bone Graft," a collagen sponge soaked in a bone morphogenetic protein ("BMP"), and (2) an LT-Cage Lumbar Tapered

---

[6]     *See* http://www.accessdata.fda.gov/cdrh_docs/pdf/P000058a.pdf (last visited March 2, 2015). Because FDA Medical Information notices regarding the approval process of medical devices are matters of public record, and are undisputed by either party, the Court will take judicial notice of them.

Fusion Device ("LT-Cage"), a metal cage device that houses the sponge. The FDA approved labeling that requires the two components of the Infuse Device to be used together. (*Id.* at 10, 14). Defendant sold the Infuse Bone Graft and the LT-Cage separately. (*Id.* at 14.) The Infuse Device "was granted approval for the treatment of degenerative disc disease at only one level between the L4 to S1 vertebrae area." (*Id.* at 13.) The FDA later expanded the approval to cover the L2 to S1 area.  (*Id.*) The approval limited the surgical approach to an anterior open or laparoscopic approach. (*Id.* at 14.)[7]

The first step in the *Riegel* express-preemption analysis is to determine whether the FDA has established requirements applicable to the Infuse Device. The FDA PMA process imposes device-specific "requirements" under the MDA. *Riegel*, 552 U.S. at 322-23. The PMA process "is federal safety review." *Id.* at 323. There is no dispute that the Infuse Device obtained PMA and thus the first prong of the *Riegel* analysis is satisfied. *Riegel's* second prong for express preemption requires this Court to determine whether Plaintiff's state-law claims seek to impose requirements that are "different from, or in addition to" the federal requirements. Such a determination requires a claim-by-claim analysis.

State-law claims are impliedly preempted where Defendant complies with federal law, but violates state law. *Wolicki-Gables,* 634 F.3d at 1300. Similarly, state-law claims are impliedly preempted where Defendant violates federal law, but does not violate traditional state-tort law. 21 U.S.C. § 337(a) (a violation of the MDA only must be prosecuted by the United States). As such, the Infuse Device meets the first prong of the *Riegel* analysis for express preemption, but needs further analysis for the second prong and for the application of implied preemption.

*///*

---

[7]     Defendant's Motion to Dismiss focuses almost exclusively on the Infuse Device and preemption (Doc. 17 at 4), apparently disregarding Plaintiff's causes of action against Class II devices (Doc. 1-2).

### 2.   Infuse Bone Graft[8]

Distinct from being a component of the Infuse Device, the FDA also approved the Infuse Bone Graft as an independent medical device for use in treating tibial fractures on April 30, 2004. The Infuse Bone Graft was approved as a Class III medical device. In 2009, the FDA extended approval to sinus augmentations, alveolar ridge augmentations, and spinal fusion procedures at one level from L4 – S1.[9] However, the Infuse Bone Graft was not approved for use without cages.

The analysis is the same for the Infuse Bone Graft as for the Infuse Device. As a Class III medical device that received PMA, it automatically meets the first prong of the *Riegel* test, but needs a claim-by-claim analysis for the second prong of *Riegel* and for implied preemption.[10]

### 3.   Capstone Cage[11]

The Capstone cage "received FDA 510(k) approval as a Class II medical device in 2008." (Doc. 1-2 at 15.) The Capstone cage is "to be 'packed with autogenous bone graft.'" (*Id.*) The Capstone cage is "indicated for use 'at one or two levels from L2 to S1.'" (*Id.*) The Capstone cage may be implanted through an open or minimally invasive posterior approach or an anterior and/or transforaminal approach. (*Id.* at 15-16.)

The first step in the *Riegel* express-preemption analysis is to determine whether the FDA has established requirements applicable to the Capstone cage. Unlike the Infuse Bone Graft and the Infuse Device, which are Class III devices, the Capstone cage is a

---

[8]   http://www.accessdata.fda.gov/cdrh_docs/pdf/P000054A.pdf (last visited March 2, 2015).

[9]   http://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpma/pma.cfm?id=6070   (last visited March 2, 2015).

[10]   The parties dispute whether the Infuse Device was used off-label by not using the LT-cage or whether the Infuse Bone Graft was used off-label by placing it directly on Plaintiff's inferior facet joints without the use of any cage. (Docs. 1-2 at 9-10; 32 at 3.) The distinction is immaterial as either theory results in a Class III medical device being used in an off-label manner.

[11]   http://www.accessdata.fda.gov/cdrh_docs/pdf7/K073291.pdf (last visited March 2, 2015).

Class II medical device and is approved through the less-rigorous 510(k) process. The 510(k) process *may* meet the first prong of *Riegel* if the FDA imposes requirements specific to the device. *See Brown v. Medtronic, Inc.,* 852 F. Supp. 717, 720-21 (S.D. Ind. 1994). However, "general regulations for Class II devices do not rise to the level to cause preemption under the MDA." *Id.* at 721. Here, the parties have not identified any device-specific requirements for the Capstone cage. Therefore, the Capstone cage fails to meet the first prong of the *Riegel* test and is not expressly preempted. Implied preemption needs a claim-by-claim analysis.

### 4.      Clydesdale Cage[12]

The Clydesdale cage "received FDA 510(k) approval as a Class II medical device in 2010."[13] (Doc. 1-2 at 16.) The Clydesdale cage is made of medical grade PEEK material. The cage is "to be packed with autogenous bone graft" for "one or two contiguous levels from L2 to S1." (*Id.*) The cage "may be implanted via a minimally invasive lateral approach." (*Id.*)

The Clydesdale cage, like the Capstone cage, received approval through the 510(k) approval process. The parties have not identified any device-specific requirements. Therefore, the Clydesdale cage is not expressly preempted, but the possibility of implied preemption remains.

### 5.      Other Medical Devices

Plaintiff includes cannulated screws, longitudinal set screws, rods, and the METRx system in her products liability action. (Doc. 1-2 at 3.) Even assuming Medtronic manufactured or sold any or all of these items, Plaintiff does not allege any defect, describe any harm, or allege that these devices were used off-label. Rather, Plaintiff admits "it may prove an impossibility to establish which specific Medtronic devices, products, and therapies (implanted in, and used upon, the body of Plaintiff)" caused her

---

[12]      http://www.accessdata.fda.gov/cdrh_docs/pdf8/K083026.pdf      (last      visited      on March 2, 2015).

[13]      The Clydesdale cage was approved by the FDA on December 29, 2008, not 2010 as alleged. *See id.* The discrepancy, however, is immaterial to Plaintiff's claims.

injuries. (*Id.* at 4.) Plaintiff alleges that "it is very possible, even likely, that Plaintiff Kathryn Marie Jones's surgeons used the CD Horizon Longitude System to implant Plaintiff with 'percutaneous fixation over many levels' during Plaintiff's three off-label surgeries." (*Id.* at 36.) However, she does not allege that it was defective, that it malfunctioned, that it caused her any harm, or that it was used off-label. Lastly, Plaintiff includes "any and all other Medtronic devices, products, and therapies" in her action. (*Id.* at 3.) Plaintiff repeatedly adds this phrase throughout her Complaint. Plaintiff fails to identify these devices, much less describe any defect or malfunction, or allege off-label use of these unknown items.

Allegations against these medical devices fail to state a claim. Here, Plaintiff makes conclusory allegations against a number of "other medical devices" manufactured and sold by Defendant. However, her allegations do not rise above the speculative level. *See Twombly*, 550 U.S. 544, 555 (a complaint must contain sufficient allegations to raise the right to relief above the speculative level); *Iqbal*, 556 U.S. 662, 678 (to show plausibility, the complaint show more than a mere possibility that Defendant acted unlawfully). Accordingly, the Court limits its review in this product liability action to the Infuse Bone Graft, the Infuse Device, and the Capstone and Clydesdale cages.

### B.      Fraud in the Inducement (Count I)

Plaintiff brings one count for fraud in the inducement. Plaintiff asserts that Defendant "fraudulently misrepresented that its medical devices, products, and therapies had been approved and cleared for use." (Doc. 1-2 at 49.)[14] Plaintiff argues that this fraudulent and knowing misrepresentation occurred through active promotion of off-label uses of its products and intentional concealment of the dangers of off-label use. (*Id.* at 49-50.) Plaintiff further alleges that medical device manufacturers, distributors, and sellers,

---

[14]      Plaintiff appears to also claim fraudulent misrepresentation. However, the inclusion of such claim does not impact the Court's analysis. *See Martin v. Medtronic, Inc.*, 32 F. Supp. 3d 1026, 1032 (D. Ariz. 2014); *Arvizu v. Medtronic, Inc.,* 2014 WL 4204933, at *6 (D. Ariz. Aug. 25, 2014); *Ramirez v. Medtronic, Inc.,* 961 F. Supp. 2d 977, 983, 996 (D. Ariz. 2013), *mot. for reconsideration denied* (Oct. 28, 2013); *In re Mortgage Elec. Registration Sys. (MERS) Litig.,* 744 F. Supp. 2d 1018, 1031 (D. Ariz. 2010).

like Defendant here, must comply with the FDA's labeling restrictions. (*Id.* at 49.)

## 1.    Express Preemption

As stated above, the Infuse Bone Graft and the Infuse Device meet the first part of the *Riegel* test. The second prong requires this Court to determine whether this state-law fraud claim seeks to impose requirements that are "different from, or in addition to" the federal requirements. "In theory, the federal 'requirements' should be easy enough to determine – they are defined by the MDA, the FDCA, and the implementing regulations." *Beavers-Gabriel,* 15 F. Supp. 3d at 1033. However, courts have struggled to apply the second step of *Riegel* to claims asserting injuries arising from off-label promotion of medical devices. *Id.* at 1033-34.

A claim based upon use consistent with the label of a medical device approved through the PMA process is expressly preempted because it seeks to impose requirements different from or in addition to those required by the FDA. *Riegel,* 552 U.S. at 321-23. Here, however, Plaintiff is alleging "off-label" uses of the medical devices.[15] Courts differ as to whether "off-label" promotion and use violates FDA requirements. Some courts hold that federal law does not bar off-label promotion,[16] while other courts hold that the FDCA's misbranding provisions ban off-label promotion.[17]

---

[15]    Plaintiff alleges a number of off-label uses: the surgical approach, the number of discs the procedure can be performed on, the location of discs approved for the procedure, the implantation of Infuse Bone Graft with the use of Capstone and Clydesdale cages instead of the approved LT-Cage, and the implantation of Infuse Bone Graft without the use of any cages. Defendant does not dispute that these are off-label uses.

[16]    *See, e.g., United States v. Caronia,* 703 F.3d 149, 162 (2d Cir. 2012) (court refused to criminalize the promotion of a drug's off-label use); *Schuler v. Medtronic, Inc.,* 2014 WL 988516, at *1 (C.D. Cal. March 12, 2014) (finding federal law does not bar off-label promotion); *Dawson v. Medtronic, Inc.,* 2013 WL 4048850, at *6 (D.S.C. Aug. 9, 2013) (court cannot accept premise that off-label promotion is illegal under the FDCA).

[17]    *See, e.g., Beavers-Gabriel,* 15 F. Supp. 3d at 1035; *Shouest v. Medtronic, Inc.,* 13 F. Supp. 3d 692, 702 (S.D. Tex. 2014) (holding that federal law bars off-label promotion when it is false or misleading."); *Eidson v. Medtronic, Inc.,* 981 F. Supp. 2d 868, 885 (N.D. Cal. 2013) (*Eidson I*) (state tort law duties are not different from or in addition to the federal requirement banning off-label promotion); *Houston I,* 957 F. Supp. 2d at 1179-80 ("federal regulations prohibit device manufacturers from promoting off-label uses of medical devices"); *Carson v. Depuy Spine, Inc.,* 365 F. App'x 812, 815 (9th Cir.

The FDCA prohibits "[t]he adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce" and "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded." 21 U.S.C. §§ 331(a) and (b). A device is misbranded if its labeling, or advertising, is false or misleading. §§ 352(a) and 352(q); *Beavers-Gabriel,* 15 F. Supp. 3d at 1034. "A device may not be manufactured, packaged, stored, labeled, distributed, or advertised in a manner that is inconsistent with any conditions to approval specified in the PMA approval order for the device." 21 C.F.R. § 814.80. "Thus, rather than escaping federal requirements by promoting an off-label use, a device manufacturer's off-label promotion itself is subject to specific MDA provisions. And like pre-market approval, these requirements govern the safety of Class III." *Houston v. Medtronic, Inc.,* 2014 WL 1364455, at *5-6 (C.D. Cal. April 2, 2014) (*Houston II*). This Court agrees with "the majority of courts in this Circuit which have determined that the FDCA prohibits off-label promotion such that a state-law claim for off-label promotion survives express preemption." *Beavers-Gabriel,* 15 F. Supp. 3d at 1034. As such, Count I survives express preemption.

## 2.   Implied Preemption

State-law claims are impliedly preempted where the claims seek to enforce an exclusively federal requirement not grounded in traditional state tort law. *See Buckman,* 531 U.S. at 341. Here, however, fraud in the inducement is a valid state-law claim. Count I fits through the narrow gap of express and implied preemption.

## 3.   Failure to State a Claim and Rule 9(b)

Although Count I is not preempted, Plaintiff must still state a claim and plead the claim with particularity as required under Rule 9(b). Arizona law requires nine elements for a fraud claim: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted

---

2010) ("while doctors may use a drug or device off-label, the marketing and promotion of a Class III device for an unapproved use violates Section 331 of the FDCA").

upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. *Jennings v. Lee,* 461 P.2d 161, 164 (Ariz. 1969).

Generally, Plaintiff has failed to allege causation beyond conclusory allegations. Plaintiff alleges "Defendant Medtronic fraudulently, intentionally, induced and persuaded *doctors* to use Infuse Bone Graft, the Infuse Bone Graft/LT-Cage Lumbar Tapered Fusion Device, Medtronic PEEK cages, and other Medtronic devices, products, and therapies in *off-label surgeries* by providing a false impression of the risks involved." (Doc. 1-2 at 50) (emphasis added). Missing from this allegation is that Defendant fraudulently induced *her doctor* to use Medtronic products in *her surgeries*. Plaintiff makes references to a number of online articles in her Complaint. However, Plaintiff does not allege that her surgeon read or relied upon these articles, nor does she allege that she read or relied upon these articles and that these articles persuaded her to have the surgery. Likewise, Plaintiff alleges "Medtronic induced *patients and doctors* to use Infuse Bone Graft, the Infuse Bone Graft/LT-Cage Lumbar Tapered Fusion Device, and other Medtronic devices, products, and therapies by fraudulently and knowingly misrepresenting and intentionally concealing facts regarding the dangers of off-label use[.]" (*Id.*) (emphasis added). Again, Plaintiff has failed to allege that Defendant induced her or her surgeon directly. Nor does she allege that if she had known the information prior to her surgery that she would not have consented to the surgery. Plaintiff next alleges: "That fraud caused Plaintiff Kathryn Marie Jones to suffer permanent, even life-threatening, grievous injuries and harm due to use of Infuse Bone Graft, the Infuse Bone Graft/LT-Cage Lumbar Tapered Fusion Device, the Capstone Spinal System, the Clydesdale spinal system, and other Medtronic products, devices, and therapies." (*Id.*) Again, Plaintiff falls far below the threshold of pleading her fraud claim with particularity.

Further, the Court finds that affording Plaintiff leave to amend this claim would be futile. *See* Fed. R. Civ. P. 15(a)(2). In her general allegations, Plaintiff twice

acknowledges she has no idea of what specifically caused her injuries. (*Id.* at 4, 20.) Plaintiff cannot meet her obligations under Rule 9(b) due to her own allegations—"it may prove an impossibility to establish which specific Medtronic devices, products, and therapies (implanted in, and used upon, the body of Plaintiff) are individually and/or concurrently responsible, and to what degree, for the . . . harm inflicted upon Plaintiff." (*Id.* at 4.) Consequently, Plaintiff cannot cure the deficiencies with additional non-contradictory allegations. *See United States v. Corinthian Colleges,* 655 F.3d 984, 995 (9th Cir. 2011).  As such, the Court dismisses Count I with prejudice.

### C.   Constructive Fraud (Count III) and Negligence (Counts IV and VI)

In Count III, Plaintiff asserts that "[a]t a minimum, Defendant Medtronic committed constructive fraud, because Defendant Medtronic failed to provide information for the safe use of the Infuse Bone Graft/LT-Cage Lumbar Tapered Fusion Device" by failing to limit the surgical approach to an anterior surgical approach, the only approach approved by the FDA. (*Id.* at 55.)[18] Plaintiff seeks to hold Defendant accountable for not providing more information than that required by the FDA. In Counts IV and VI, Plaintiff asserts two claims based on negligence: (1) willful negligence and gross negligence, and (2) negligence per se. Plaintiff's first negligence claim alleges Defendant was willfully and grossly negligent in promoting and marketing off-label use of its products but not providing additional safety information for the off-label use. (*Id.* at 55-56.) Similarly, Plaintiff's negligence per se claim alleges Defendant "failed to provide instructions for physicians to safely use its medical devices in an off-label use that had

---

[18]     "Constructive fraud is defined as a breach of a legal or equitable duty which, without regard to moral guilt or intent of the person charged, the law declares fraudulent because the breach tends to deceive others, violates public or private confidences, or injures public interests." *Lasley v. Helms,* 880 P.2d 1135, 1137 (Ariz. Ct. App. 1994). "Constructive fraud also requires the existence of a fiduciary or confidential relationship." *Id.* at 1138. Here, there is no fiduciary or confidential relationship between Plaintiff and Defendant and constructive fraud cannot be found as a matter of law. However, the gravamen of Plaintiff's claims is that Defendant failed to appropriately limit the device's use and/or failed to provide additional safety instructions for possible off-label uses of the device. These claims fit squarely within the fraud-by-omission claims described in *Perez,* 711 F.3d 1109. Therefore, the Court considers Count III a fraud-by-omission claim.

been promoted by Medtronic."[19] (*Id.* at 58.)

Although Plaintiff designates the claims as fraud and negligence, the legal issues presented in these three counts are virtually identical. Plaintiff alleges that, because Defendant promoted the off-label use of FDA-approved medical devices, Defendant has additional duties: (1) limiting the surgical approach in its promotion materials to the anterior surgical approach, and (2) providing additional safety information to the surgeons for the off-label uses of its devices.

### 1.    Express Preemption

A "claim of omission is expressly preempted by the preemption provision in the [MDA]. Even if it were not, it is impliedly preempted because it amounts to an attempt to privately enforce the FDCA." *Perez,* 711 F.3d at 1117. The plaintiff in *Perez* "effectively s[ought] to write in a new provision to the FDCA: that medical device companies must affirmatively tell patients when medical devices have not been approved for a certain use." *Id.* at 1118-19. That disclosure requirement is "different from, or in addition to" the requirements applicable to those required under the MDA. *Id.* at 1118. A plaintiff "cannot bring a claim that rests solely on the non-disclosure to patients of facts tied to the scope of PMA approval." *Id.* at 1119.

Like the claim in *Perez,* Plaintiff seeks to have a medical device company affirmatively tell patients when medical devices have not been approved for a certain use—in this case, a surgical approach. Plaintiff argues that Defendant failed to disclose that the only surgical approach for the Infuse Device approved by the FDA was by anterior approach. Plaintiff is seeking to write in a new provision and add to the requirements provided by the FDA. The Ninth Circuit has made it clear that medical device companies, pursuant to the FDCA and the MDA, do not have an affirmative duty

---

[19]    Negligence and negligence per se are valid state-law claims. However, the issues in Counts IV and VI are identical to the issue in Count III. Plaintiff seeks to require Defendant to provide more information than that required by the FDA, an issue that is expressly and impliedly preempted by law. This may be better characterized as a fraud-by-omission claim, but, ultimately, the title Plaintiff gives her claims is immaterial to the outcome of this case. It does not affect the analysis.

1    to inform patients of unapproved procedures. *Id.* at 1118-19. Accordingly, as to the

2    Infuse Bone Graft and the Infuse Device, Count III is expressly preempted.

3          Similarly, Plaintiff's negligence claims also seek to add to the FDA requirements

4    by requiring Defendant to provide additional information than that required by the FDA.

5    The FDA does not require medical device companies to provide safety information on all

6    possible off-label uses. Plaintiff's allegations that Defendant failed to provide additional

7    safety information, taken as true, complies with FDA requirements. Therefore, as to the

8    Infuse Bone Graft and the Infuse Device, the state-law negligence claims are preempted.

9                        **2.      Implied Preemption**

10         Although the Infuse Bone Graft and Infuse Device are expressly preempted, the

11   Capstone and Clydesdale cages remain. In order to survive implied preemption, Plaintiff

12   has to show that Defendant violated state tort law and the MDA. *See Buckman,* 531 U.S.

13   at 341. Even if Plaintiff's allegations in Counts III, IV, and VI are taken as true—that

14   Defendant did not limit the surgical options to the anterior approach in its promotional

15   materials and that Defendant did not provide additional instructions for possible off-label

16   uses—Defendant has not violated the MDA. As described above, federal regulations

17   require neither. Accordingly, Counts III, IV, and VI are impliedly preempted and will be

18   dismissed.

19                        **3.      *Ramirez v. Medtronic***

20         In Count VI, Plaintiff makes an additional argument. Plaintiff urges the Court to

21   adopt *Ramirez v. Medtronic, Inc.,* 961 F. Supp. 2d 977 (D. Ariz. 2013), *mot. for*

22   *reconsideration denied* (Oct. 28, 2013), which finds that when a manufacturer promotes

23   off-label use of its devices, the claim avoids preemption because the manufacturer has

24   established a new use for the device that has not been approved by the FDA. (Doc. 1-2 at

25   63.) However, this Court joins the majority of courts in rejecting *Ramirez* to the extent

26   that off-label promotion defeats MDA preemption.[20] Therefore, Plaintiff cannot avoid

27   _____

28   [20]      *See, e.g., Wright v. Medtronic, Inc.*, 2015 WL 328596, at \*8 (W.D. Mich. Jan. 23, 2015) (the reasoning in *Ramirez* "has been rejected by numerous district courts"); *Scovil v. Medtronic, Inc.,* 995 F. Supp. 2d 1082, 1096, n. 12 (D. Ariz. 2014) ("The Court

preemption based on *Ramirez*. Accordingly, Counts III, IV, and VI are expressly preempted as to the Infuse Bone Graft and the Infuse Device and impliedly preempted as to the Capstone and Clydesdale cages and will be dismissed.

### D.    Design Defect (Count V)

Plaintiff alleges the Infuse Bone Graft and the Infuse Device are defectively designed because the FDA approved the design for a particular use. Plaintiff's Complaint limits her allegation to the Class III devices at issue.[21] Plaintiff alleges any other use of the device constitutes defective design. (Doc. 1-2 at 57.) She further alleges that Defendant purposefully promoted and marketed the off-label use of its products. (*Id.*)

Design-defect claims against a medical device approved by the FDA through the PMA process must "alleg[e] that the product sold by Medtronic was not the product design approved in the PMA Supplement." *In re Medtronic, Inc., Sprint Fidelis Leads Products Liab. Litig.,* 623 F.3d 1200, 1206 (8th Cir. 2010) ("*Sprint Fidelis*"). The Eighth Circuit held that "these are not parallel claims. Rather, they are attacks on the risk/benefit analysis that led the FDA to approve an inherently dangerous Class III device. Such claims are expressly preempted by § 360k." *Id.* "State tort law that requires a manufacturer's [device] to be safer, but hence less effective, than the model the FDA has approved disrupts the federal scheme no less than state regulatory law to the same effect." *Riegel,* 552 U.S. at 325. Many district courts have found that a design defect

---

respectfully disagrees with [the] ruling in *Ramirez*."); *Beavers-Gabriel,* 15 F. Supp. 3d at 1035 ("*Ramirez* has been rejected – for good reason – by numerous courts."); *Schouest v. Medtronic, Inc.,* 13 F. Supp. 3d 692, 700 (S.D. Tex. 2014) (finding that *Ramirez* reads *Riegel* too narrowly); *Martin v. Medtronic, Inc.*, 32 F. Supp. 3d 1026, 1036 (D. Ariz. 2014) ("This court joins the majority of other courts which have rejected *Ramirez* to the extent that it holds that the preemption analysis does not apply to claims based on off-label promotion."); *Houston II,* 2014 WL 1364455, at *5 ("the *Ramirez* holding is not consistent with the text of § 360k(a), the scope of federal requirements imposed on Class III devices, or Ninth Circuit precedent.").

[21]    Plaintiff's first paragraph of a one-page cause of action deals explicitly with the Infuse Bone Graft and the Infuse Device. (Doc. 1-2 at 57.) Plaintiff's generic allegation two paragraphs later that "[t]he design of the Medtronic devices, products, and therapies was defective[]" does not transform Count V into an action against all Medtronic devices. Even if not expressly or impliedly preempted, this allegation is conclusory and fails to state a claim upon which relief may be granted.

19

claim is expressly preempted[22] because, in order to prevail, a plaintiff would need to establish that the medical device should have been designed in a manner different than that approved by the FDA.

Here, Plaintiff has not alleged that the Class III devices implanted during her surgeries were different than the product design approved in the PMA process. Quite the opposite, she argues the design should be different from the design approved in the PMA process. (Doc. 1-2 at 57.) Plaintiff does not allege that the design was anything other than the one the FDA approved, thereby failing, on its face, to make a claim that is not preempted. *See Sprint Fidelis*, 623 F.3d at 1206. Plaintiff's allegation is that its off-label use is what made the design defective is unpersuasive. Courts have routinely rejected this argument involving similar claims. As such, Plaintiff's design defect claim is expressly preempted under § 360k(a).

The Court adds that in Plaintiff's response, she alters her claim. (Doc. 30 at 15-20.) There she alleges she is bringing a design-defect claim based on a malfunction theory of products liability and limits her allegations to the Clydesdale cage. (*Id.* at 15.) She asserts that this allows her to prove the product malfunctioned rather than having to prove a specific defect. (*Id.*) Complaints however, may not be amended through an opposition to a motion to dismiss. *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984); *see also Frederico v. Home Depot,* 507 F.3d 188, 201-02 (3d Cir. 2007) ("we do not consider after-the-fact allegations in determining the sufficiency of her complaint under Rules 9(b) and 12(b)(6)."); *Morgan Distrib. Co. v. Unidynamic Corp.,* 868 F.2d 992, 995 (8th Cir. 1989) (allowing a party to amend in a brief "would mean that

---

[22] *See, e.g., Blankenship v. Medtronic, Inc.,* 6 F. Supp. 3d 979, 988 (E.D. Mo. 2014) (rejecting plaintiff's design-defect claim when device manufactured in accordance with FDA-approved design); *Beavers-Gabriel,* 15 F. Supp. 3d at 1040 ("Plaintiffs would need to establish that the Infuse Device should have been designed in a manner different than that approved by the FDA"); *Houston I,* 957 F. Supp. 2d at 1177-78 (finding express preemption for design defect claim against the Infuse Device when used in an off-label manner); *Arvizu v. Medtronic, Inc.,* 2014 WL 4204933, at *8 (D. Ariz. Aug. 25, 2014) (finding express preemption even though Infuse Device was used with BMP and without the LT-Cage); *Scovil,* 995 F. Supp. 2d at 1095 (holding that design defect claim against the Infuse Device was preempted).

a party could unilaterally amend a complaint at will"). As such, the Court does not consider Plaintiff's malfunction theory.[23] Therefore, Count V will be dismissed as preempted.

### E.    Actual Fraud (Count II)

Plaintiff's second fraud claim, based on Arizona's Consumer Protection Statute, alleges Defendant and others concealed the "actual facts" surrounding her surgeries. (Doc. 1-2 at 51.) Plaintiff essentially alleges that she was charged for devices not implanted or overcharged for devices that were implanted and that Defendant is deliberately concealing the list of items implanted during Plaintiff's surgeries. (*Id.* at 50-53.)

Plaintiff alleges she obtained her hospital records, which included several pages of labels listing products and devices implanted during her surgery. (*Id.* at 51.) Plaintiff also read a magazine article in which a doctor was quoted as stating that "BMP's (sic) range in cost from $3,000 to $5,000, depending on the size of the kit." (*Id.*) Plaintiff then alleges that "the total cost of Infuse Bone Graft implanted in Plaintiff Kathryn Marie Jones would be $20,000."[24] (*Id.* at 52.) She compares this figure with the Explanation of Benefits she received, which identifies the supply/implant costs in excess of $225,000. (*Id.*)  Plaintiff then asks, "What could possibly be implanted inside Plaintiff Kathryn Marie Jones's back that cost (sic) over $225,000.00?". (*Id.*) Thus, Plaintiff alleges by inference that she has been overcharged. However, in light of Plaintiff's other allegations, this is an unreasonable inference and deduction of fact. *See Daniels–Hall*, 629 F.3d at 998. Plaintiff also maintains that she was implanted with "**1 – xx small package Infuse Bone Graft[,] 2 – small packages Infuse Bone Graft[,] 1 – medium package Infuse Bone Graft**[,] 4 – Clydesdale Spinal System PEEK Cages[,] 1 – Capstone Spinal System

---

[23]    Further, the Court notes that Arizona does not recognize a malfunction theory cause of action. Without a valid state-law claim, Plaintiff could not meet her burden of alleging parallel claims. *See Perez,* 711 F.3d at 1117. Plaintiff cannot cure this deficiency; the argument fails as a matter of law.

[24]    It appears that Plaintiff is multiplying four by the upper limit of $5,000 per unit to reach $20,000. The four packages are those in bold. (Doc. 1-2 at 51.)

PEEK Cage[,] 11 – Cannulated Screws – Titanium[,] 11 – Longitude Set Screws – Titanium[,] 1 – 220mm Rod – Titanium[, and] 1 – 190mm Rod – Titanium." (*Id.* at 7 (emphasis added); (*see also* Doc. 30 at 5, Plaintiff alleges she was implanted with 38 Medtronic devices).) Further, Plaintiff does not identify the particular entity that allegedly overcharged her. In her response, Plaintiff asserts that "Defendant Medtronic received more than 2 to 3 times the normal reimbursement…" and that "[i]t appears that Defendant Medtronic, Plaintiff's surgeons, and the hospital all benefited from the destruction of Plaintiff's health and well-being." (Doc. 30 at 21.) In other words, Plaintiff generally alleges that she was or could have been overcharged by Defendant, by her surgeon, by the hospital, or a combination thereof. Thus, this allegation amounts to nothing more than an unreasonable inference unsupported by any fact. *See Daniels–Hall*, 629 F.3d at 998.

Plaintiff further alleges that she requested a list of all Medtronic products implanted in her during the three surgeries, which Defendant refused to provide her with. (Doc. 1-2 at 52.)[25] She therefore claims "Defendant Medtronic has committed actual fraud – with the willful intent to harm and injure Plaintiff Kathryn Marie Jones. Defendant Medtronic has fraudulently concealed information from Plaintiff Kathryn Marie Jones." (*Id.* at 53.) This claim is conclusory, and Plaintiff provides no legal support for the contention that Defendant has a duty to provide her the information she seeks. Plaintiff fails to allege any possible or actual harm resulting from the lack of disclosure. Rather, her doctors, surgeons, and the hospital facility could, and did, provide Plaintiff with the information she seeks. (*Id.* at 7.) Plaintiff therefore does not state a legal claim for relief, much less meet the heightened pleading standards for fraud. Because no additional facts would cure these defects, amendment as to Count II would also be futile. As such, this claim will be dismissed with prejudice.

---

[25] Further, Plaintiff made this request in connection with a discovery request in a separate California action. *See Gonzalez v. Medtronic, Inc.,* No. CV-12-09592-DMG (C.D. Cal. Feb. 14, 2013). Plaintiff cannot litigate a discovery dispute in her California case here.

**F.**     **Punitive Damages (Count VII)**

Plaintiff alleges she is entitled to punitive damages due to Defendant's "wanton, intentional, malicious, fraudulent acts." (*Id.* at 65.) Punitive damages cannot stand alone as a separate claim. *Greenwald v. Ford Motor Co.,* 993 P.2d 1087, 1089 (Ariz. Ct. App. 1999) (citing *Sisemore v. Farmers Ins. Co. of Ariz.,* 779 P.2d 1303, 1305 (Ariz. Ct. App. 1989). Plaintiff may seek punitive damages as a remedy, but not as a substantive claim for relief. *Martin v. Medtronic, Inc.*, 2014 WL 6633540, at *8 (D. Ariz. Nov. 24, 2014); *Beavers-Gabriel,* 15 F. Supp. 3d at 1043. Because all other counts are dismissed and punitive damages cannot stand alone, the Court will dismiss Count VII for failure to state a claim.

**V.**     **Additional Matters**

**A.**     **Entities**

Plaintiff asserts naming "Medtronic" as a Defendant should be adequate to put the following entities on notice: (1) Medtronic, Inc., (2) Medtronic Sofamor Danek USA, Inc., (3) Medtronic Vertelink, Inc., (4) Wyeth Pharmaceuticals, Inc., and (5) Pfizer. (Docs. 21, 30.) Plaintiff also requests permission to add Medtronic Spinal and Biologics Business. (Doc. 30.)

In order to bring claims against an individual or entity, a plaintiff must name each as a defendant individually, and present sufficient factual content against each defendant from which the court could distinguish the conduct alleged to have been committed and draw a reasonable inference that party is liable for that conduct. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556. Here, Plaintiff solely brings allegations against Medtronic. Plaintiff does not name the remaining parties as defendants nor does she set forth any allegations against these additional entities sufficient to state a claim and thereby warrant leave to amend the complaint to add them.

**B.**     **Doe Defendants**

Fictitious defendants are not favored in federal court as a general rule. *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980). "[T]he plaintiff should be given an

opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id.* Here, Plaintiff does not allege that she is unaware of identifies of manufactures or sellers of the medical devices at issue. Nor does Plaintiff show that additional defendants or discovery would be beneficial to proving her claims. Therefore, leave to amend is not warranted to allow Plaintiff an opportunity to substitute parties.

## C.     Judicial Notices and Requests to Strike

Plaintiff has filed eight requests for judicial notice. (Docs. 34, 40, 41, 44, 46, 54, 59, 62.) Plaintiff's pleadings are essentially sur-replies, which the Local Rules do not permit (*see* LRCiv 7.2), for which Plaintiff did not seek the Court's permission to file. The Court will disregard these supplemental briefing, but notes that their content would not otherwise impact the outcome of the foregoing analysis. Additionally, Defendant's Request for Judicial Notice (Doc. 18) and Motion to Strike (Doc. 19) are denied as moot.

Plaintiff further seeks the Court to strike Defendant's replies in support if it's Motion to Dismiss and Motion to Strike as untimely. (Doc. 35.) Defendant objects on the basis that the filings were timely. (Doc. 36.) Plaintiff filed her response to the Motion to Dismiss on April 28, 2014. (Doc. 30.) Defendant's reply was therefore due 10 days later on May 8, 2014. *See* LRCiv 7.2(d) (provides for seven days to file reply); Fed. R. Civ. P. 6(d) (provides for an additional 3-day mailing period). Plaintiff filed her response to the Motion to Strike on April 30, 2014. (Doc. 31.) Defendant's reply was due on May 12, 2014. *See* LRCiv 7.2(d); Fed. R. Civ. P. 6(d) and 6(a)(1)(C) (if the last day falls on a weekend or holiday, the due date is moved to the next workday). Defendant filed both replies (Docs. 32-33) on May 8, 2014. Defendant's replies were timely. Therefore, Plaintiff's Motion to Strike is denied.

## VI.    Conclusion

For the foregoing reasons, the Court will grant Defendant's motion to dismiss. Plaintiff's claims in Counts III – VI are dismissed as preempted by federal law, which cannot be cured by amendment. Plaintiff's claims in Counts I, II and VII are dismissed

for failure to state a claim, and as addressed on a count-by-count basis above, additional allegations could not cure the deficiencies in those claims and amendment would be futile. The Court also finds amendment is not warranted to allow Plaintiff an opportunity to add or substitute parties. Therefore, the Complaint will be dismissed in its entirety without leave to amend. The parties' remaining requests will also be denied. Accordingly,

**IT IS ORDERED**:

1.  That Plaintiff's Requests for Judicial Notice (Docs. 34, 40, 41, 44, 46, 54, 59, 62) are **denied;**

2.  That Defendant's Motion to Strike (Doc. 19) and Request for Judicial Notice (Doc. 18) are **denied as moot**;

3.  That Defendant's Motion to Dismiss (Doc. 17) is **granted**;

4.  That this action is **dismissed in its entirety with prejudice**; and

5.  That the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 5th day of March, 2015.

Honorable Steven P. Logan
United States District Judge